**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

JUSTIN SEASTROM,

       Movant,

vs.

UNITED STATES OF AMERICA.

No. 13-CV-115-LRR
No. 12-CR-31-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

**I.**    **INTRODUCTION AND PROCEDURAL HISTORY.** . . . . . . . . . . . . . . . . **2**

**II.**   **RELEVANT BACKGROUND OF CRIMINAL CASE.** . . . . . . . . . . . . . . **3**

**III.**  **ANALYSIS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

    **A.**    *Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255.* . . . . . **6**
    **B.**    *Evidentiary Hearing.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    **C.**    *Ineffective Assistance of Counsel Claims.* . . . . . . . . . . . . . . . . . **8**
        *1.*    *Ineffective assistance of plea counsel.* . . . . . . . . . . . . . . . . . **9**
            *a.*    *Sentencing advice.* . . . . . . . . . . . . . . . . . . . . . . . . . **9**
                *i.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . **9**
                *ii.*   *Application.* . . . . . . . . . . . . . . . . . . . . . . . . **11**
            *b.*    *Suppression issues.* . . . . . . . . . . . . . . . . . . . . . . . . **11**
                *i.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . **11**
                *ii.*   *Application.* . . . . . . . . . . . . . . . . . . . . . . . . **13**
            *c.*    *Discovery file and case file.* . . . . . . . . . . . . . . . . . **14**
                *i.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . **14**
                *ii.*   *Application.* . . . . . . . . . . . . . . . . . . . . . . . . **15**
            *d.*    *Failure to attend court on time.* . . . . . . . . . . . . . . . **16**
                *i.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . **16**
                *ii.*   *Application.* . . . . . . . . . . . . . . . . . . . . . . . . **17**
            *e.*    *Failure to object to the draft PSIR.* . . . . . . . . . . . . **17**
                *i.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . **17**
                *ii.*   *Application.* . . . . . . . . . . . . . . . . . . . . . . . . **18**
        *2.*    *Ineffective assistance of sentencing counsel.* . . . . . . . . . . . . **18**
            *a.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . **18**

|  |  | b. | Application | 20 |
| | D. | Prosecutorial Misconduct. | | 21 |
| | | 1. | Parties' arguments. | 21 |
| | | 2. | Application. | 22 |
| | E. | Breach of Contract. | | 23 |
| | | 1. | Parties' arguments. | 23 |
| | | 2. | Application. | 23 |
| | F. | Certificate of Appealability. | | 24 |
| IV. | CONCLUSION | | | 26 |

## I. INTRODUCTION AND PROCEDURAL HISTORY

The matter before the court is Justin Seastrom's ("the movant") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 ("motion") (civil docket no. 1). The movant filed the motion on October 22, 2013. On November 14, 2013, the court, among other things, directed the government to brief the claims in the movant's motion. November 14, 2013 Order (civil docket no. 2). On January 6, 2014, James Moriarty, the movant's counsel through the plea stage ("plea counsel"), filed an affidavit ("Moriarty affidavit") (civil docket no. 11). On January 15, 2014, the movant filed a supplement to the motion (civil docket no. 13).[1] On February 20, 2014, sentencing counsel filed an affidavit ("Kelly affidavit") (civil docket no. 17). On March 12, 2014, the government filed a resistance to the motion ("resistance") (civil docket no. 18). The movant has not filed a reply and the time to do so has expired. *See* February 11, 2014 Order (civil docket no. 16) at 1 ("If he so chooses, the movant is directed to file a brief in reply to the government's response by no later than April 7, 2014."). The motion is fully submitted and ready for decision.

---

[1] The movant filed the supplement to the motion in response to the court's January 3, 2014 Order (civil docket no. 9) directing him to clarify whether he was asserting that the movant's counsel through sentencing, Jane Kelly ("sentencing counsel"), provided ineffective assistance. In the supplement to the motion, the movant stated that he is asserting that both plea counsel and sentencing counsel provided ineffective assistance.

## II. RELEVANT BACKGROUND OF CRIMINAL CASE

On April 23, 2012, the government filed a two-count information (criminal docket no. 2) charging the movant with: (1) knowingly possessing two firearms, that is, a loaded Bersa Thunder .380 caliber pistol, bearing serial number 791749, and a loaded Rock Island Armory .45 caliber pistol, bearing serial number RIA1215266,[2] while being an unlawful user of marijuana and after having been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 922(g)(3) (Count 1); and (2) knowingly and intentionally possessing pseudoephedrine with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(1) (Count 2). Information at 1-2. The information also contains a forfeiture allegation. *Id.* at 2.

On April 27, 2012, the movant pled guilty to Counts 1 and 2 of the information before Judge Scoles pursuant to a plea agreement. April 27, 2012 Minute Entry (criminal docket no. 16). At the plea hearing, the parties estimated that the movant's offense level would be 26 prior to acceptance of responsibility with a criminal history category III or IV, which would result in a 57- to 71-month range or a 70- to 87-month range, respectively. Plea hearing transcript (criminal docket no. 52) at 21. On May 14, 2012, the court accepted Judge Scoles's Report and Recommendation (criminal docket no. 17), which recommended that the court accept the movant's guilty pleas. May 14, 2012 Order (criminal docket no. 20).

On July 13, 2012, the United States Probation Office ("USPO") filed a draft presentence investigation report ("draft PSIR") (criminal docket no. 21). In the draft

---

[2] In the plea agreement (criminal docket no. 18), the Rock Island Armory .45 caliber pistol is described with serial number RIA1215366. *Id.* at 7. The final presentence investigation report ("final PSIR") (criminal docket no. 32) referenced the serial number for that firearm also as RIA1215366. *Id.* ¶ 8. The court has referenced the serial number in the information. There is no serial number listed for the firearm in the forfeiture allegation as the forfeiture allegation refers back to Count 1 of the information.

PSIR, the USPO stated that "[b]ased upon a total offense level of 23 and a criminal history category of VI, the guideline imprisonment range is 92 months to 115 months." Draft PSIR ¶ 78. The government did not file any objections to the draft PSIR.

On July 23, 2012, plea counsel filed a motion to withdraw (criminal docket no. 23). In the motion to withdraw, plea counsel informed the court that he had not been paid the amount due under the retainer agreement and that, contrary to his advice, the movant had contacted federal authorities "in an attempt to directly negotiate his case disposition" when the movant's state charges were pending and before the federal government brought additional charges against the movant. Motion to withdraw at 2. Plea counsel also stated that he "delivered a copy [of the draft PSIR] to the [movant] on or about . . . July 13, 2012 at the Linn County Correctional Facility, and advised the [movant] he needed to review the report and advise [plea counsel] of any objections, corrections, additions or deletions by July 27, 2012." *Id.* Plea counsel noted that "no [indication] of dissatisfaction with the services of [plea counsel] were given by the [movant]." *Id.* On July 16, 2012, the movant left a telephone message with plea counsel, informing plea counsel that his services were no longer required. *Id.* On August 1, 2012, Judge Scoles granted the motion to withdraw, and on that same date, the judge ordered that new counsel should be appointed. August 1, 2012 Order (criminal docket no. 28).

On August 30, 2012, the movant filed objections to the draft PSIR. Objections (criminal docket no. 31). None of the objections challenged the advisory guideline sentence computation. On September 6, 2012, the USPO filed a final PSIR. On September 20, 2012, the government filed a sentencing memorandum (criminal docket no. 34). On September 25, 2012, the movant filed a sentencing memorandum (criminal docket no. 35). Both sentencing memoranda acknowledged that there were no contested sentencing issues that the court would have to address.

On October 5, 2012, the government filed a supplement to the government's sentencing memorandum (criminal docket no. 36) stating that it "obtained new evidence which it believes could impact the advisory guideline range, and create contested issues for the [c]ourt's consideration." Supplement to the government's sentencing memorandum at 1. The government attached an exhibit to the supplement to the government's sentencing memorandum, that is, a September 24, 2012 letter written by the movant and addressed to a target of an ongoing investigation by the government. In the letter, the movant told the target that Agent Steven Warner was asking the movant for information concerning the target. Letter to target (criminal docket no. 36-1) at 1. The movant stated that someone stole $7000 of his money from an acquaintance who was holding his money and that the acquaintance knows who stole the money. *Id.* The movant told the target that he needed him to do something about it. *Id.* The movant wrote the following:

> Yeah, I cant cut my time back. Youre the only one they want me to tell on & I can't do it dawg! If I tell on you, who's gonna take care of me for 7 years? You better have me dawg. like 40$ a month will do me just fine dawg! Amanda took ALL my shit & broke bad. Lara broke bad. I aint got no one bro! So I need you to hold me down & try & get some of my 7 grand back for me!

*Id.* at 2. Due to this letter, the government stated that the movant might not be entitled to acceptance of responsibility, might have obstructed justice and might have violated a condition or term of his plea agreement, which would forfeit the movant's USSG §1B1.8 protection and potentially subject him to an offense level of 36. Supplement to the government's sentencing memorandum at 2.

On October 23, 2012, the parties filed a joint sentencing agreement (criminal docket no. 39). In the joint sentencing agreement, the parties agreed that, in light of the letter, "a reduction for acceptance of responsibility is not appropriate" and "without acceptance of responsibility, the advisory guideline range is 120 to 150 months." Joint sentencing

agreement at 1-2. The government withdrew its request that the court impose an enhancement for obstruction of justice and also "agree[d] not to seek an increase in [the movant's] offense level based on information provided by [the movant and] protected under USSG §1B1.8." *Id.* at 2.

On October 24, 2012, the court sentenced the movant to 150 months in prison. Judgment (criminal docket no. 41) at 2. The term consisted of a 120-month term for Count 1 and a 150-month term for Count 2, to be served concurrently. *Id.*

## III. ANALYSIS

### A. Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255

28 U.S.C. § 2255 allows a prisoner in custody under the sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255).

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.") (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987)). A collateral challenge under 28 U.S.C.

§ 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) (making clear a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (internal quotation marks and citation omitted).

## B. *Evidentiary Hearing*

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *See United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the movant to relief. *See Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996). "Accordingly, [a district court may summarily dismiss a motion brought under 28 U.S.C. § 2255 without an evidentiary hearing] if (1) the . . . allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995) (citations omitted); *see also Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (stating that an evidentiary hearing is unnecessary where allegations, even if true, do not warrant relief or allegations cannot be accepted as true because they are contradicted by the record or lack factual evidence and rely on conclusive statements); *United States v. Hester*, 489 F.2d 48, 50 (8th Cir. 1973) (stating that no evidentiary hearing is necessary where the files and records of the case demonstrate that relief is unavailable or where the motion is based on a question of law). Stated differently, the court can dismiss a 28 U.S.C. § 2255 motion without a hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord Standing Bear v. United States*, 68 F.3d 271, 272 (8th Cir. 1995) (per curiam).

The court concludes that it is able to resolve the movant's claims from the record. *See Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993) (holding that "[a]ll of the information that the court needed to make its decision with regard to [the movant's] claims was included in the record" and, therefore, the court "was not required to hold an evidentiary hearing" (citing Rule Governing Section 2255 Proceedings 8(a) and *United States v. Raddatz*, 447 U.S. 667, 674 (1980))). The evidence of record conclusively demonstrates that the movant is not entitled to the relief sought. Specifically, it indicates that the movant's assertions fail because plea counsel and sentencing counsel represented the movant in a manner that comports with the requirements of the Sixth Amendment and that the movant's remaining claims are without merit. As such, the court finds that there is no need for an evidentiary hearing.

### C. Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI.

The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ordinarily, a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003). In *Strickland*, the Supreme Court explained that a violation of the right to effective assistance of counsel has two components:

> First, [a movant] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [movant] by the Sixth Amendment. Second, [a movant] must show that the deficient performance prejudiced the defense.

*Strickland*, 466 U.S. at 687; *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000) (reasserting *Strickland* standard). In other words, the movant "must demonstrate: (1) his [or her] attorney's performance was deficient and fell outside the range of reasonable professional assistance; and (2) he [or she] suffered prejudice by showing that, absent counsel's ineffective assistance, there is a reasonable probability that the result of the proceeding would have been different." *United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001). Thus, *Strickland* requires a showing of both deficient performance and prejudice. *Id.* However, "a court deciding an ineffective assistance claim . . . [need not] address both components of the inquiry if the [movant] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. If a court finds "counsel's performance adequate, [it] need not address the issue of prejudice under the second prong of the *Strickland* test." *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002). Conversely, "[i]f it is easier to dispose of an ineffectiveness claim on ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 670; *see also Apfel*, 97 F.3d at 1076 ("[A court] need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice.").

### 1. *Ineffective assistance of plea counsel*

In the motion, the movant argues that plea counsel was ineffective because

> [o]n numerous occasions, [plea counsel] lied to and deceived me. . . . The Sixth Amendment states that I have the right to have <u>effective</u> counsel to help me through court proceedings. Effective counsel that I can trust, that I can rely on to ensure that I rec[ei]ve a fair trial. Effective counsel to perform as an independent lawyer devoted to me, the defendant. My Sixth Amendment right was violated, and on numerous occasions [plea counsel] betrayed the trust that I am supposed to instill in him.

Motion at 4. The movant argues that plea counsel was ineffective for a number of reasons, which the court will address in turn.

### a. *Sentencing advice*

### i. *Parties' arguments*

First, the movant argues that plea counsel was ineffective because "[o]n NUMEROUS occasions [plea counsel] told me that if I took the plea deal being offered, he guaranteed me that I would do no more than six years in prison. He also told my fiancé[e] this during multiple phone calls." *Id.* at 13.

In his affidavit, plea counsel states that he "was at all times over the course of [his] representation completely honest and truthful with [the movant]." Moriarty affidavit at 2. With respect to the movant's sentencing, plea counsel states that he told the movant, as he does all his clients, that he cannot guarantee a specific outcome and that he never guaranteed the movant or the movant's fiancée that the movant would serve no more than six years in prison. *Id.* at 3. Plea counsel also asserts that the only thing he would have guaranteed the movant was that he could not be sentenced above the maximum sentences, that is, ten years on Count 1 and twenty years on Count 2. *Id.* Plea counsel notes that the plea agreement indicates that the court is not bound by any agreement between the parties and has discretion to determine the appropriate sentence and that the movant acknowledged that he understood each provision in the plea agreement. *Id.*

The government argues that the movant's claim that plea counsel guaranteed the movant that he would serve no more than six years in prison is not factually supported by the record. Resistance at 19. The government asserts that plea counsel confirmed that he never made any guarantee regarding the movant's sentence and that the movant's claim is belied by the plea agreement and the movant's statements during the plea hearing. *Id.* Even if plea counsel's advice was ineffective, the government argues that the movant fails to show prejudice because the movant was advised of the maximum sentence and the court had discretion to sentence up to the maximum. *Id.*

### ii.    *Application*

The court finds that the movant's claim that plea counsel guaranteed the movant that he would serve no more than six years if he pled guilty is not supported by the record. Plea counsel made clear in a letter to the movant that he "cannot guarantee the specific outcome of this or any other matter in any Court." Retainer letter (civil docket no. 11-3) at 1. Plea counsel also states in his affidavit that he did not guarantee the movant or the movant's fiancée that the movant would serve no more than six years in prison. *See* Moriarty affidavit at 3. Additionally, the movant acknowledged in the plea agreement that there was no "express or implied promise or guarantee concerning the actual sentence to be imposed by the [c]ourt" and that the movant "understands the [c]ourt is not bound by the stipulations of the parties, nor is it bound by the sentencing range as determined pursuant to the sentencing guidelines." Plea agreement at 8. Moreover, the movant's own letter to the target acknowledged that he could be in prison for seven years. The movant was also informed at the plea hearing, through the attorneys' estimates, that 87 months in prison was a possibility. Also at the plea hearing, the movant confirmed that no one had "made any promise to [him] to get [him] to plead guilty, other than what's in the plea agreement." Plea hearing transcript at 25. Finally, at the sentencing hearing, the movant expressed no dissatisfaction with the guideline sentencing range of 120 to 150 months. *See* sentencing hearing transcript (criminal docket no. 53). Accordingly, the movant's claim that plea counsel promised him that he would serve no more than six years in prison if he pled guilty is without merit and the court finds that plea counsel's assistance regarding the possible sentence that the movant faced was not constitutionally deficient.

### b.    *Suppression issues*

### i.    *Parties' arguments*

Next, the movant claims that he asked plea counsel about filing a motion to suppress based on an illegal search of his vehicle but that plea counsel told him that the search was

a legal *Terry* frisk and that the movant's best option was to take the plea offer and not file any motions. Motion at 13. The movant contends that, based on his conversations with two other attorneys, "a *Terry* frisk does NOT extend [to] an unwarranted search of an unoccupied, locked vehicle in a parking lot" and that "[plea counsel] lied to [him]." *Id.* The movant further claims that plea counsel failed to challenge the integrity of the arresting officers' statements. *Id.* at 14.

Plea counsel states that he never referred to the search of the movant as a *Terry* frisk and that he never saw any ground for suppression of any of the evidence. Moriarty affidavit at 4. Plea counsel notes that the movant had an active warrant and was arrested in a public place while getting into a vehicle with a backpack and that such backpack contained a firearm, drugs and drug precursors. *Id.* Plea counsel also notes that "[t]he backpack alone could support the charges without the additional items located and seized in the vehicle shortly thereafter." *Id.* Plea counsel states that with regard to challenging the arresting officers' statements, he told the movant that these statements are challenged during trial and that the movant had elected to plead. *Id.* at 5. Plea counsel contends that it was his opinion that the movant's "best chances were with a plea, but at no time did or would [he] have forced [the movant] to plea or give up his rights to trial." *Id.* at 5.

The government argues that the movant cannot show prejudice as a result of plea counsel's decision not to file a motion to suppress the evidence found in the search of the vehicle because, even if the motion were successful, it "would not have resulted in suppression of the items seized from the backpack." Resistance at 21. And, the government contends that a motion to suppress would not have been successful. *Id.* at 22-23. Additionally, the government also argues that plea counsel did not err in challenging the accuracy of statements made by the arresting officers because "[t]here is no evidence in the record indicating that any statements made by the arresting officers were inaccurate." *Id.* at 23.

### ii.    *Application*

As an initial matter, the court notes that "[t]here is a strong presumption that counsel's strategic choices were reasonable." *Forsyth v. Ault II*, 537 F.3d 887, 891 (8th Cir. 2008). Plea counsel's decision not to move to suppress the evidence found in the vehicle was certainly reasonable. "[T]he 'automobile exception' permits the warrantless search of a vehicle if the police 'had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began.'" *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). "'Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005)). In this case, the movant was arrested on an active warrant while getting into a vehicle. The movant's backpack was searched incident to his arrest. The movant does not challenge the search of the backpack in which the arresting officers found a loaded .380 caliber Bersa Thunder handgun, two boxes of .45 caliber ammunition, a baggy containing marijuana, a digital scale, numerous empty plastic baggies, a baggy of methamphetamine, a baggy containing twenty pseudoephedrine pills, ten white pills, a dollar bill with methamphetamine residue, three glass pipes containing marijuana residue, a knife and a marijuana grinder, all of which the movant admitted to possessing. *See* plea agreement at 6-7. Under these circumstances, and particularly because the movant was carrying ammunition of a caliber different than that of the gun found in his backpack, the arresting officers had probable cause to search the vehicle for additional contraband, that is, weapons and drugs. Accordingly, plea counsel's performance was not deficient for failing to move to suppress the evidence found in the vehicle because doing so would have been futile. Furthermore, because the suppression motion would not have been successful, the movant was not prejudiced by plea counsel's decision not to file a motion to suppress.

With regard to plea counsel's failure to challenge the arresting officers' statements, there is no evidence in the record indicating that the arresting officers' statements are inaccurate. Furthermore, the movant does not state how he suffered prejudice due to this alleged deficiency. Accordingly, the movant has not provided any basis for the court to conclude that plea counsel provided ineffective assistance for failing to challenge the arresting officers' statements.

### c.     *Discovery file and case file*

#### i.     *Parties' arguments*

The movant further argues that when Judge Scoles asked him if he had time to look over his discovery file, plea counsel told him "just say yes" after he asked plea counsel what a discovery file was. Motion at 14. The movant contends that he never saw his discovery file and that he did not know what it was until after sentencing. *Id.* The movant also contends that plea counsel did not "send a copy of my case file to [him] and to [his] fiancé[e] so that [he] [could] review [his] case and so that [his] fiancé[e] [could] get opinions from other counsel." *Id.*

With respect to not showing the movant the discovery file, plea counsel contends that the movant's statement that he did not know what a discovery file was is not credible due to the movant's lengthy criminal record. Moriarty affidavit at 5. Plea counsel also states that he discussed the government's file with the movant on several occasions and that the discovery file does not leave the government's office. *Id.* Plea counsel submits that "[i]t is not [his] practice to direct clients to say ["yes"] to matters that they have questions about." *Id.*

With regard to the case file, plea counsel states he "would have strongly advised [the movant] against keeping confidential matters [such as the case file] in [the movant's] cell" given that the movant was "trying to better his position with the authorities by directly providing supposedly incriminating evidence against other people involved in drug

trafficking in the area." *Id.* at 6. With respect to not providing the case file to the movant's fiancée, plea counsel states that the movant's fiancée was not a privileged party.

The government argues that the record belies the movant's contention that plea counsel told the movant "just say yes" after Judge Scoles asked whether the movant had reviewed the discovery materials. The government notes that at the plea hearing, Judge Scoles asked *counsel* if he had reviewed the government's discovery materials and that *counsel* answered in the affirmative. Resistance at 24 (citing plea hearing transcript at 17-18). Further, the government notes that Judge Scoles never asked the movant whether he had previously reviewed the discovery file and that the movant was neither asked this question at the hearing on the motion to withdraw nor asked this question at the sentencing hearing. Moreover, the government contends that the movant has failed to show prejudice because (1) the "[m]ovant has not demonstrated and does not assert in [the] motion that [plea] counsel's alleged failure to provide certain information prompted [the movant] to enter the plea agreement" and (2) "[the] [m]ovant [does not] allege that he would [have] gone to trial but for . . . [plea] counsel's action." *Id.* at 25.

### ii. *Application*

The court finds that the movant's allegations that plea counsel was ineffective for telling him "just say yes" when the movant was asked whether he had reviewed the discovery file is without merit. As the government notes, the court never asked the movant if he had reviewed the discovery file at any hearing. Moreover, plea counsel reviewed the discovery file and discussed it extensively with the movant, and plea counsel also reviewed the State of Iowa discovery file and discussed it with the movant.[3] Accordingly, plea counsel's performance was not deficient with respect to the discovery

---

[3] The movant was originally charged in the Iowa District Court for Linn County, Case No. FECR097671. The case was dismissed in favor of a federal prosecution on May 1, 2012. *See* final PSIR ¶ 47.

file. The movant also fails to show how he was prejudiced by any alleged deficient performance because he does not indicate how any evidence would have altered his decision to plead guilty. For this additional reason, the movant's ineffective assistance of counsel claim fails.

With respect to plea counsel's alleged failure to provide the movant or the movant's fiancée the case file, the court finds that the movant's claim fails because the movant elected to have plea counsel represent him, neither plea counsel nor the movant is entitled to retain or disseminate the government's discovery file and the movant has failed to show how he was prejudiced by plea counsel's failure to provide him or his fiancée with the case file. In fact, after plea counsel withdrew, sentencing counsel was able to review the facts of the case and, after consulting with the movant, determined that the best course was to follow through with the guilty plea and refrain from seeking the suppression of any of the evidence.

Accordingly, the movant's ineffective assistance of counsel claim fails with respect to plea counsel's handling of the discovery file and the case file.

### d. Failure to attend court on time

#### i. Parties' arguments

The movant also argues that plea counsel was ineffective because he was late to many of the movant's hearings, did not always bring the case file and twice showed up in jeans and a t-shirt. Motion at 14. The movant claims that Judge Scoles gave plea counsel a stern warning regarding contempt of court. *Id.*

Plea counsel acknowledges that he was late and did not "suit up" to one of the movant's three hearings during the course of his representation, but plea counsel does not recall Judge Scoles giving him a stern warning regarding contempt of court. Moriarty affidavit at 6.

The government argues that the movant's allegation that plea counsel was late to several hearings is inaccurate. Resistance at 26. The government notes that the record indicates that plea counsel only appeared three times, not five, and that plea counsel was only late for one appearance. The government concedes that counsel was late for the hearing on the motion to withdraw, but the government points out that Judge Scoles did not tell him he would be held in contempt. In any event, the government argues that the "[m]ovant cannot show any prejudice resulting from [plea] counsel being late to court on one or two occasions." *Id.*

### ii. Application

The court finds that the movant is not entitled to relief on this ground because the movant has not made any allegations whatsoever indicating why he was prejudiced by plea counsel's late appearance and how the outcome of his case would have been different had plea counsel appeared at the hearing on time and appropriately dressed. Aside from not showing prejudice, the movant's allegations appear to be exaggerated as he accused plea counsel of being late to three of the five hearings when, in fact, plea counsel only appeared three times in this case. Moreover, contrary to the movant's allegations, Judge Scoles never warned plea counsel that he would be held in contempt. Further, Judge Scoles was not the sentencing judge. Accordingly, the movant's ineffective assistance of counsel claim fails with respect to the movant's allegation that plea counsel's performance was deficient for failing to appear at court on time.

### e. Failure to object to the draft PSIR

### i. Parties' arguments

Finally, the movant states that plea counsel was ineffective for failing to make the movant's requested objections to the draft PSIR. Motion at 14. Specifically, the movant states that plea counsel told him to sign off on the draft PSIR and that plea counsel would make the requested changes back at his office. *Id.*

Plea counsel states that while the movant objected to matters in the draft PSIR, despite many of the matters having been previously agreed to in the plea agreement, he advised the movant "that recanting would not be in his best interests as his previous admissions were consistent with the evidence and acceptance of responsibility would be in his favor and should not be discarded or recanted." Moriarty affidavit at 5-6. Plea counsel denies the movant's allegation that he told the movant to sign off on the draft PSIR and that he would make changes when he got back to his office. *Id.* at 6.

With regard to plea counsel's failure to make objections to the draft PSIR, the government notes that sentencing counsel filed objections on the movant's behalf on August 30, 2012 and, therefore, the movant was not prejudiced. Resistance at 25.

### ii.     Application

Once again, the movant has failed to show how any alleged deficiency on the part of plea counsel prejudiced the outcome of his case. After plea counsel withdrew from the case, the movant had another opportunity for sentencing counsel to object to the draft PSIR, which sentencing counsel did on August 30, 2012. Accordingly, the movant's claim that plea counsel was ineffective fails on this ground as well.

### 2.     *Ineffective assistance of sentencing counsel*

### a.     *Parties' arguments*

The movant states that sentencing counsel "told [him] to follow through with [his] plea of guilty, get sentenced, and then bring [an ineffective assistance claim against plea counsel] on a '2255' motion." Motion at 13. The movant further states that sentencing counsel told him "that if [he] recant[ed] [his] guilty plea, then [he would] run the risk of losing the plea agreement offer from the prosecution." *Id.* The movant contends that he "wanted to challenge the legality of the search, but [sentencing counsel] didn't want to risk losing a good plea deal." *Id.* The movant contends that sentencing counsel was ineffective as "to [sentencing counsel's] advice to not challenge the guilty plea and raise certain

18

issues, but mainly that she didn't challenge and argue the 'maximum sentence within the guidelines' due to a firearm being loaded and readily available, when the firearm wasn't even part of [his] case." Supplement to the motion at 1. The movant contends that "[t]his gun was thrown out" and his sentence "was based solely upon this firearm." *Id.*

In her affidavit, sentencing counsel states that the movant "did not object to the guideline range used by the court at sentencing" and that she is confident that she and the movant discussed the movant's appeal rights, which the movant waived when he was represented by plea counsel. Kelly affidavit at 2. Sentencing counsel contends that "the Eighth Circuit was unlikely to consider [ineffective assistance] claims on direct appeal" and that on October 26, 2012, the movant "signed a document specifically notifying [her] that he waived his rights to appeal." *Id.*

Sentencing counsel states that she and the movant "did discuss the possibility of filing a motion to withdraw his guilty plea so that he could file a motion to suppress" and that she thoroughly discussed this option, including the risks and benefits, with the movant and another attorney. *Id.* at 3. Sentencing counsel advised the movant that if he filed the motion, "it seemed likely that the government would revoke the plea agreement, which contained both charging and sentencing benefits" and if he filed the motion to withdraw, there "was no guarantee the court would grant it." *Id.* Moreover, sentencing counsel advised the movant that "[e]ven if the court granted the motion [to withdraw], there was certainly no guarantee a motion to suppress the evidence would also be granted." *Id.* Sentencing counsel notes that "[t]he ultimate decision on whether to file the motion to withdraw the guilty plea was [the movant's] to make." *Id.* Sentencing counsel denies telling the movant to file a § 2255 motion after sentencing, but she admits discussing the possibility of filing one with the movant, including that a decision not to file a motion to withdraw "may affect what issues the court would be willing to consider in a post-conviction motion." *Id.* at 4.

With regard to the movant's contention that sentencing counsel did not challenge the maximum sentence due to one of the firearms being "thrown out," sentencing counsel asserts that she is not sure what the movant means by the gun being "thrown out," because it was part of the movant's plea agreement. As for not challenging the maximum sentence, sentencing counsel states she presented mitigating factors with respect to the movant's potential sentence and that, ultimately, the court is in the best position to determine how it arrived at a maximum sentence within the advisory sentencing guideline range.

The government argues that sentencing counsel did not err in advising the movant that he could not file a direct appeal because he waived his right to do so in the plea agreement. The government also argues that sentencing counsel's performance was not deficient for advising the movant not to withdraw his guilty plea because doing so would have increased his sentencing exposure and, ultimately, a motion to suppress would not have been successful. With regard to the movant's argument that sentencing counsel did not argue against the maximum sentence under the guideline range, the government states that while the movant denied possessing the gun at the plea hearing, "this does not mean that the government could not prove, for relevant conduct purposes, that [the] [m]ovant possessed both firearms." Resistance at 28. Moreover, the government contends that "the factual stipulations in the plea agreement establish constructive possession of this second firearm." *Id.*

### b. *Application*

For the reasons stated in the government's brief, all of the movant's ineffective assistance claims concerning sentencing counsel are without merit. Sentencing counsel properly advised the movant that he could not file a direct appeal because he had waived that right in his plea agreement. Sentencing counsel also properly advised the movant, although still giving him the ultimate decision, not to withdraw his guilty plea because doing so would have increased his sentencing exposure. *See Ault II*, 537 F.3d at 891

("There is a strong presumption that counsel's strategic choices were reasonable."); *United States v. Rodriguez*, 741 F.3d 908, 911 (8th Cir. 2014) (stating that counsel did not perform deficiently when deciding to stipulate to facts after advising the defendant of his options because counsel "crafted a strategy that he believed would benefit" the defendant). In fact, sentencing counsel obtained the best possible outcome for the movant by negotiating a deal that prevented the movant from forfeiting USSG §1B1.8 protection, which could have resulted in an astronomical sentence. Thus, sentencing counsel's performance was not deficient. In addition, for the reasons discussed in Part III.C.1.b.2, a motion to suppress evidence would have been without merit. Therefore, the movant did not suffer prejudice due to this alleged deficient performance. Finally, with regard to the movant's contention that sentencing counsel did not argue against the maximum sentence under the advisory sentencing guideline range based on one of the guns being "thrown out," the court notes that sentencing counsel did argue against the maximum sentence. To the extent sentencing counsel did not argue that the movant was entitled to a lesser sentence based on one of the guns being "thrown out," the court notes that, even though the movant denied possessing the gun, the court would have found that the movant possessed the gun for purposes of relevant conduct and would have sentenced the movant to the same sentence, regardless of sentencing counsel's arguments. Therefore, with respect to this last argument, the movant has not shown prejudice. Accordingly, all of the movant's ineffective assistance claims against sentencing counsel are without merit.

### D. Prosecutorial Misconduct

#### 1. Parties' arguments

In the motion, the movant argues that the government committed prosecutorial misconduct because the government told him and his attorney that he would recommend a sentence "on the low end of your guideline range of 71-87 months," which was not the government's recommendation at sentencing. Motion at 5 (internal quotation marks

omitted). The movant also contends that the government "pushed for a maximum sentence 'due to the readily availability of the firearm,'" which the movant states was not part of his plea or case. *Id.*

The government argues that the movant has procedurally defaulted on this claim and, even if he has not, the movant "expressly waived his right . . . to seek collateral review of any claims other than ineffective assistance of counsel claims, or a claim that his sentence was not in accordance with the plea agreement, was constitutionally excessive, or exceeded the maximum statutory penalty." Resistance at 10. Moreover, the government argues that the movant's claim has no merit. *Id.*

### 2.    *Application*

The court finds that the record does not support a finding that the government agreed to recommend a sentence on the low end of the guideline range. In the plea agreement, the parties stipulate to certain issues, but aside from these issues the plea agreement notes that "[n]o other agreements have been reached, and the parties are free to litigate any and all other applicable adjustments, departures, or cross-references under the United States Sentencing Guidelines." Plea agreement at 9. Certainly, there is no mention of the government promising to advocate for a low-end sentence. Also, at the plea hearing, the movant confirmed that no one had "made any promise to [him] to get [him] to plead guilty, other than what's in the plea agreement." Plea hearing transcript at 25. In fact, after the government discovered that the movant violated the plea agreement, the parties filed a joint sentencing agreement in which they stated that "the advisory guideline range is 120 to 150 months" and "[t]he parties are free to ask for any sentence within this range." Joint sentencing agreement at 2. With respect to the movant's argument that the government pushed for a maximum sentence based on a firearm that was not part of his plea or case, the court notes that, for purposes of relevant conduct, the movant did possess the firearm in the vehicle and the government properly discussed the

firearm in the vehicle at the sentencing hearing. Accordingly, because the court finds that the government raised appropriate arguments, the movant's claim of prosecutorial misconduct is without merit.

### E. Breach of Contract

#### 1. Parties' arguments

In the motion, the movant argues that he was told at the change of plea hearing that he would be "in the guideline range of 71-87 months" and that he pled guilty after "being led to believe by the court[] that [he] would be sentenced within these guidelines." Motion at 7, 13.

The government argues that the guideline range of 71-87 months estimated at the plea hearing was only an estimate and that the plea agreement specifically stated that the parties had not agreed to the movant's criminal history category. The government also argues that the movant has waived his right to contest this issue and, to the extent the movant contends that arguing for a longer sentence violated the plea agreement, the government notes that "[n]othing in the plea agreement indicates that the government is bound by any guideline estimate made at the plea hearing." Resistance at 13. The government notes that "at the plea hearing, Judge Scoles told [the movant] that his guideline range could be higher or lower than that estimated by the parties" and that the movant "expressly agreed to the higher guideline range in the joint sentencing agreement." *Id.* at 14. The government acknowledges that the Eighth Circuit Court of Appeals views plea agreements as contracts, *see United States v. Fowler*, 445 F.3d 1035, 1037 (8th Cir. 2006), but it contends that "no term of the plea agreement was violated." Resistance at 14.

#### 2. Application

The court finds that the movant's breach of contract claim is without merit. The plea agreement included stipulations as to the movant's offense level, but the movant's

behavior prior to sentencing caused the movant to face a total offense level of 26. Further, the parties did not stipulate to a specific criminal history category; rather, the plea agreement stated that "[n]o agreement has been reached regarding [the movant's] criminal history." Plea agreement at 9. In fact, the plea agreement stated that "discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the [c]ourt" and that no other agreements, aside from stipulations regarding offense level, had been reached. *Id.* at 8-9. The movant has not pointed to any specific term of the plea agreement that was violated and, to the extent the movant relies on the government's representations at the plea hearing, Judge Scoles noted that the proposed advisory sentencing guideline range was only an estimate and that the court "may calculate a lower or higher guideline range than what's been predicted by the lawyers." *See* plea hearing transcript at 22. Certainly, as the government notes, the government's estimate of a sentence "does not create a promise, especially in light of the clear language in the plea agreement indicating that no agreement was reached on criminal history." Resistance at 14-15. Accordingly, the movant's breach of contract claim is without merit.

### *F. Certificate of Appealability*

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order is subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(B). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per

curiam); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the movant must demonstrate that the issues are debatable among reasonable jurists, a court could resolve the issues differently or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that the movant failed to make the requisite "substantial showing" with respect to the claims that he raised in the motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because the movant does not present a question of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, the court shall deny a certificate of appealability. If the movant desires further review of the motion, the movant may request issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED**:

(1) The movant's 28 U.S.C. § 2255 motion (civil docket no. 1) is **DENIED**.

(2) A certificate of appealability is **DENIED**.

**DATED** this 15th day of August, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA